**BALL, Plaintiff-Appellant,  v. YOUNGSTOWN SHEET & TUBE CO.,  Defendant-Appellee.**

Ohio Appeals, Seventh District, Mahoning County.

No. 3795.   Decided October 6, 1955.

Traxler & Beil, Youngstown, for plaintiff-appellant.

Manchester, Bennett, Powers & Ullman, Youngstown, for defendant-appellee.

**OPINION**

By PHILLIPS, PJ.

Plaintiff appealed to this court on questions of law from a judgment of the court of common pleas entered upon a jury verdict for defendant, Youngstown Sheet & Tube Company, a self insurer under the Workmen's Compensation Act of Ohio, in plaintiff's appeal to that

court to determine her right to participate in the Workmen's Compensation Fund of Ohio, as the result of the death of her husband, William N. Ball, on December 3, 1953. The Industrial Commission of Ohio upon rehearing denies her claim of right to participate on the ground that proof of record did not show that the husband's death resulted from an injury sustained in the course of and arising out of his employment.

While working on May 3, 1947, as an acetylene welder for the Youngstown Sheet & Tube Company, decedent, upon whom plaintiff was wholly dependent for support at the time of his death, was subjected, as plaintiff claims, to unusual fumes and soot due to faulty operation of an exhaust fan designed to remove such soot and fumes.

It is plaintiff's claim that as a direct and proximate result of inhaling such soot and fumes her husband suffered a coronary thrombosis and died from pulmonary edema and arterioschlerotic heart disease on December 1, 1953.

Plaintiff's expert medical witnesses testified that in their opinion there was a probable causal relationship between her husband's injury on May 3, 1947, and his death on December 1, 1953.

During deliberation the jury sent the following question to the trial judge:—

"Is it possible to have the testimony of Dr. Mahar and Dr. Reid?"

The following colloquy had in open court between the trial judge and the jury and the trial judge and counsel followed the receipt of the question. In order to understand the question presented it is believed this colloquy should be set forth verbatim.

"At this time, 3:15 P. M., the Jury returned to the court room, and all three counsel being present, the following proceedings were had:

"The Court: The jury has sent this message: 'Is it possible to have the testimony of Dr. Mahar and Dr. Reid?' Is it possible to have it read over to them, I presume.

"Mr. Beil: To which we object.

"The Court: What is your ground for the objection?

"Mr. Beil: I don't think it is fair to take a strip or a portion of the evidence and read it over.

"The Court: Yes, but how else can we do it?

"Mr. Beil: Read it all over.

"The Court: No. I think the Jury is entitled to have whatever they ask. Of course, the statute provides that the Judge shall give his recollection of the testimony. I am going to give the Jury my recollection of the testimony of these two doctors, and I will proceed to do it right now, but the method by which I do that is just what you are going to hear. Anything from you, Mr. Fleming?

"Mr. Fleming: No.

"The Court: Now, let me ask this of the foreman or forelady so we understand you. Who is the foreman or forelady?

"Juror No. 5: I am.

"The Court: No. 5. You can sit right down. Does the Jury want this testimony read over or what do they want?

"Juror No. 5: I will have to let Juror No. 1 speak; she is the one that asked for it.

"Juror No. 1: There is a discrepancy in the statement—.

"The Court: All I want to know is does the jury want the testimony read over? You say 'Is it possible to have the testimony—?' I can't give it to you in writing. I can't give you the transcript, but I want to know whether you mean by this do you want it read over to you, is that what you want?

"Juror No. 1: We weren't sure in whose testimony this occurred, this statement of possibility and probability; what is what we are interested in.

"The Court: Oh, OK.

"Mr. Beil: It is in all four doctors.

"The Court: How would it be to excuse the jury until morning and you gentlemen, over night, pick out the parts about probability and possibility.

"Mr. Fleming: I don't like to do that, your Honor. We can do whatever is required right now.

"The Court: Very well, here is the transcript and you gentlemen find it for us, as I am not going to search for it.

"Mr. Fleming: Shall we read the testimony then, Your Honor?

"The Court: She now says what they are interested in are the parts dealing in possibility and probability, and they don't know what Doctor used those words, and as the lawyer just said, I think it is in every doctor's testimony, so you gentlemen may kindly pick it out.

"Juror No. 1: There was a place where it was defined and that is What I had in mind.

"The Court: Oh, where the words 'probability and possibility' were defined.

"Juror No. 1: Yes, and we think it was in Dr. Mahar's testimony, but we are not quite sure.

"Mr. Fleming: Your Honor, I would like to read Dr. Mahar's testimony, the part where it is defined.

"The Court: Well, why don't you check Dr. Reed's testimony also?

"Mr. Traxler: Do you want the other Doctors too, Your Honor?

"The Court: If you do, then you want anything dealing with the words 'probability and possibility'?

"Juror No. 1: Yes.

"The Court: You said the part dealing with the meaning of the words 'Probability and possibility'?

"Juror No. 1. Yes, and I would recognize it if I heard it.

"Mr. Traxler: They just want the parts where the words are used.

"The Court: No, not just where the words are used, where there is some meaning of the words.

"Mr. Traxler: There is not anything in there about the meaning.

"The Court: This is Dr. Kirkwood first.

"Mr. Traxler: Yes, Your Honor.

"The Court: All right.

"Juror No. 1: May I ask this question?

"The Court: Yes.

"Juror No. 1: Was the term 'probable' used in the first two Doctors' report and the term 'possible' in the third and fourth?

"The Court: See, we can't answer you that.

"Mr. Fleming: I would like to show, for the record, an objection to this procedure, Your Honor.

"The Court: Sure, you can object to anything you want to. You can't object to a juror asking a question, she has a right to ask the question.

"Mr. Fleming: I am just noting my objection.

"The Court: All right, sure.

"Mr. Fleming: If your Honor please, there is not anything in the record in answer to the Juror's question, as to the meaning of the words 'possibility and probability,' and I don't believe it is proper for the court now to read extracts from the testimony merely because those two words appear.

"The Court: All right, then, you gentlemen don't want me to tell the jury anything.

"Mr. Fleming: I am agreeable to telling the jury the answer to their questions, if it can be given, and, as I understand the law, that is all the court can do.

"The Court: All right, what did she want to know: She wanted to know what the doctor said about those words. She didn't ask for a charge of the law from the court on it.

"Mr. Fleming: As I understood Mrs. Moyer's question, she wanted the place in the record where the two terms 'possibility and probability' were defined.

"The Court: Is that right?

"Juror No. 1: Discussed or defined, but where that part came there was a part in there in which those two terms were used, and there was a direct question and an answer, and that was the part, and when it was read originally—.

"The Court: You don't know what doctor.

"Juror No. 1: I am not sure, but I think it was in the later testimony, and I thought it was two doctors, and I am not the only one that thought so.

"Mr. Fleming: If, as I recollect what you said—.

"Juror No. 1: Your Honor, I may have used the wrong term, I am sorry.

"The Court: Now, do you gentlemen want time over night to check the record and pick out what you want read, or what do you want me to do now? I am putting it right back on you.

"Mr. Beil: Your Honor, we are willing to leave it to your sound discretion.

"The Court: Well, I have this thought: We ought to read these parts that we have marked here by various counsel; then I thought I ought to stop until morning. You gentlemen check your records and see if you want anything else read.

"Mr. Fleming: If the Court please, I think it is not fair to either side to read extracts out of the testimony, because the testimony can only be reasonably understood in its whole context. Just to take out a few questions and answers because those two words 'possibility and probability' appear in it, I feel it emphasizes, if you please, something

that should not be emphasized, or it may have an entirely different meaning, unless the jury has in mind what has transpired immediately before that and something after that.

"The Court: We don't know what the jury has in mind. We have no right to ask them, and then the next point is the jury needs help on this and I am willing to give whatever help I can. Now, we are going to have read to them these parts that deal with this and if any of the jury recognize these parts as the one you want, raise your hands and we will know it; then if you don't, the lawyers, over night, will check further and will try to find out what you want.

"Whereupon, part of Dr. E. E. Kirkwood's direct testimony was read by the reporter as follows: 'Q. Doctor, I noticed you used the words "could have been." A. We will say probably. Q. I was wondering whether it was a possibility or a probability? A. Probability.'

"Juror No. 2: Say that over again.

"The reporter: 'Q. Doctor, I noticed you used the words "could have been." A. We will say probably. Q. I was wondering whether it was a possibility or a probability? A. Probability.'

"The Court: Now, then, you are not through yet. I don't think we should stop at just one place.

"Re-cross examination of Dr. Kirkwood read as follows: 'Q. You have no way of knowing that that was due to pulmonary edema? A. I said probably.'

"Cross examination of Dr. Paul J. Mahar read as follows: 'Q. How could that be determined at the present time, other than autopsy? A. I don't think it could be determined. It would be purely conjecture, and depend, then, on possibilities. For me to say it was probable, I just cannot say that.' (Other questions and answers in between) 'A. I think it is always a possibility if the man inhaled enough fumes that he was totally devoid of oxygen. It is understandable it would be possible for a coronary thrombosis to occur, but there again we have no proof of the amounts. We have no proof of kinds. It would be purely speculative, and a possibility, not a probability.'

"Cross examination of Dr. Lewis K. Reed read as follows: 'Q. Well, Doctor, in your answer to Mr. Fleming's question, is your opinion based upon possibility? A. No. Q. Is it possibility? A. Yes. He made a statement as to a definite opinion and that certainly is a probable type of answer.'

"The Court: Now, to be fair to both sides, it being now a quarter to four, I am going to excuse the jury until nine tomorrow morning and that will give all counsel a chance to review the record, and if they see any other specific parts dealing with this question, they can call it to the court's attention tomorrow morning at nine o'clock.

"Members of the Jury, you are excused now until nine tomorrow morning, and please observe the usual caution, as I have always instructed you. The place to discuss the case and make up your minds is in the jury room tomorrow morning, when you are all together, so, over night, just keep open minds and observe the usual caution; be back in the jury room at nine tomorrow morning. That is all for today.

"(Whereupon, the jury left the court room.)

"Mr. Beil: Counsel for the plaintiff agrees with counsel for the defendant that this procedure is not proper, just picking certain excerpts from the testimony, and it is not giving the jury the true meaning of the answers as read, and therefore we are obliged to object.

"Mr. Traxler: Mr. Traxler wants to withdraw all objections to this proceeding.

"The Court: Be sure all those objections are withdrawn.

"Mr. Fleming: Counsel for the defendant objects to the reading of the selected parts of the transcript by the court, such selected portions being those parts in which the words 'possibility or probability' appear, for the reason that from the reading of only these portions, being out of context, it likely and probably will mislead the jury, and if any portion is going to be re-read, then the whole of the testimony of that witness should be reread, so that the jury may understand fully without any misunderstanding.

"The Court: Well, now what part do you want re-read? Do you want the whole testimony of the witness read? Do you want Dr. Kirkwood's all read over and Dr. Maher's and Dr. Reed's? Is that what you want?

"Mr. Fleming: I have to be fair about it. It should be.

"The Court: Well, how about reading over all of the doctors' testimony to them?

"Mr. Traxler: It is all right with us.

"The Court: Do you want to do it that way? I am trying to be cooperative with the lawyers and I am having an awful time to do it.

"Mr. Fleming: Well, then you will have Dr. Rosoff's testimony.

"The Court: Then your position is you will go along reading your doctors' testimony over again but you won't go along with their doctors' being read over.

"Mr. Fleming: We will agree to Dr. Kirkwood's.

"The Court: What do you gentlemen say to that?

"Mr. Traxler: We want all the doctors' testimony read.

"The Court: All right, well, think it over night, gentlemen.

"Thursday, February 17—Morning session. Whereupon, all three counsel being present, the following proceedings were had, not in the presence of the jury:

"The Court: Now is there anything else you gentlemen want to add, or anything you want the court to do?

"Mr. Fleming: I have said all I want to say, Your Honor.

"Mr. Traxler: We don't want to say anything either.

"The Court: All right, Mr. Bailiff, take the Exhibits back to the jury room."

It is conceded by defendant that at the time plaintiff filed her brief the following portion of the foregoing colloquy did not appear in the bill of exceptions, but was added subsequently by the court reporter by order of the trial judge as a correction to the bill of exceptions requested by defendant:—

"Mr. Traxler: Mr. Traxler wants to withdraw all objections to this proceeding.

"The Court: Be sure all those objections are withdraw." (See pages 25 and 26 of Bill of Exceptions.)

Appellant assigns as her sole ground of error that "the trial court committed prejudicial error, and should have granted a new trial, when he conversed with the jury following an inquiry by the jury after several hours of deliberation."

Appellant contends by brief that "the sole question before this court is whether the trial court committed prejudicial error when he, in answer to a question propounded by the jury, following several hours of deliberation, carried on a rather detailed discussion with them and finally read certain portions of the answers of the medical witnesses" concerning the use of the words "possibility and probability" as used by medical witnesses.

Further by brief counsel for plaintiff maintain that:—

"The question upon which these answers were based were not read and the jury certainly could not have had a clear understanding of what the doctors were referring to without first having the questions read. Furthermore, the answers by themselves would not clearly portray a full and complete picture of the doctor's testimony without reading the preceding questions and answers so as to obtain the purpose of the interrogation. Some of the answers invariably were based upon previous answers to prior questions.

"It is the feeling of the plaintiff that the jury was obviously in the state of utter confusion after the court permitted these answers to be read again."

Defendant states by brief:—

"In general defendant-appellee agrees with the statement of facts set forth in plaintiff's brief except it does not agree that the plaintiff's decedent was subjected to an unusual amount of fumes and soot, or that an accidental injury occurred or that plaintiff's decedent died as a proximate result of an accidental injury."

With reference to a situation such as disclosed by the entire colloquy §2315.06 R. C. provides:—

"* * * and also, in the presence of or after notice to the parties or their counsel, the court may state its recollection of the testimony upon a disputed point."

We believe the request of the jury was reasonably definite, and upon authority of **Scott v. Wix, 71 Oh Ap 519**, conclude that the trial judge correctly granted the jury's request even though such request necessitated reading from the bill of exceptions, and that he did not abuse his discretion as it is apparent to us that he did nothing more than to use the statutory discretion vested in him.

In the case of **Roos-Meyer-Hecht Company v. Ball, 12 Abs 619**, the court said:—

"Counsel, with full knowledge of what had transpired, could not take a chance upon a verdict of the jury, and when this chance turned out to be unfavorable, then complain of such misconduct on the part of the jury. If they desired to rely upon this misconduct, they should then have asked the court to withdraw a juror. Misconduct of jury was waived by counsel by proceeding with the trial of their case."

Sec. 2321.03 R. C., provides:—

"An exception is not necessary, at any stage or step of the case or matter, to lay a foundation for review whenever a matter has been called to the attention of the court by objection, motion, or otherwise and the court has ruled thereon. Error can be predicated upon erroneous statements contained in the charge, not induced by the complaining party, without exception being taken to the charge."

If plaintiff felt she was prejudiced by the proceedings to which reference has been made she should have moved for withdrawal of a juror, and made application for a mistrial immediately. See **Dierks v. Persons, 6 Abs 638.**

Counsel for plaintiff was present and participated in the colloquy and objected to it, but at the conclusion thereof withdrew all objections.

Under the state of the record, and the law applicable thereto, it is difficult for us to understand plaintiff's right to complain concerning the action of the trial judge with respect to such colloquy.

"Any irregularity in connection with the jury must generally be brought to the trial court's attention for a ruling thereon in order to preserve the question for review. * * * This principle has also been applied in cases where the court has seemingly refused requests from a jury for further instructions, or clarification or review of the evidence, where counsel were present, stood by, and interposed no objection to the course of conduct indulged in by the trial court." 3 O. Jur. (Second), **Section 219, page 93.**

Also see **Hubbuch v. City of Springfield, 63 Oh Ap 329; Sprung v. duPont Company, 16 O. O. 352.**

As stated by defendant by brief, in which statement we concur:—

"It is noted that in plaintiff's brief it is mentioned that this defendant objected to the court's procedure on the ground that it was prejudicial error. It is elemental that the plaintiff cannot take advantage of an objection made by his opponent to seek relief. When plaintiff withdrew his objections and failed to move for a mistrial the court must assume that he felt he was not being prejudiced in any manner. It has been held that one party cannot take advantage of error by the court in refusing to give special instructions requested by the other party. 3 O. Jur. (2d), Section 692. Similarly one party cannot complain that the court erroneously refused the demand of the other party for a new trial. 3 O. Jur. (2d), Section 683.

Quoting further from defendant's brief, in which quotation we likewise concur, defendant has, and obviously we have, no means of knowing on which issue the jury found:—

"Aside from the foregoing argument it cannot reasonably be said that the conduct of the court resulted in a verdict prejudicial to the defendant merely because the testimony on the point of 'possibility' and 'probability' was reread to the jury. There were two issues in the case, namely, whether or not there was an accidental injury and, whether or not there was a causal relationship between injury and death. The jury's verdict could have been based on lack of 'accidental injury,' or lack of causal relationship, or lack of both insofar as the record shows."

It is obvious from what we have said that the judgment of the trial court must be and hereby is affirmed.

GRIFFITH, J, concurs.
NICHOLS, J, concurs in judgment.